# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WISCONSIN

---

Six Star Holdings, LLC,
and Ferol, LLC

        Plaintiffs,

        v.                       Case No. 2:10-cv-893

City of Milwaukee,
        Defendant.

---

## FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
_____

The Plaintiffs, by their attorneys The Jeff Scott Olson Law Firm, S.C., by Jeff Scott Olson, hereby supplement and amend the allegations made in the First Amended Complaint as follows:

### I.    NATURE OF ACTION

101. This is a civil action brought by the Plaintiffs pursuant to 42 U.S.C. § 1983 in order to obtain damages as well as declaratory and injunctive relief from the enforcement of several of the Defendant City of Milwaukee ordinances that regulate erotic dance entertainment within the city limits.

## II. JURISDICTION AND VENUE

201. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343(a)(3) (42 U.S.C. § 1983 jurisdiction), and 2201-2202 (declaratory judgment jurisdiction).

202. The Eastern District of Wisconsin is the proper venue for this action because the Plaintiffs' claims arise within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## III. PARTIES

A. Plaintiffs

301. The Plaintiff, Six Star Holdings, LLC, is a Wisconsin limited liability company with the capacity to sue and be sued in this court.

302. The Plaintiff, Ferol, LLC, is a Wisconsin limited liability company with the capacity to sue and be sued in this court.

B. Defendant

303. The Defendant City of Milwaukee is a Wisconsin unit of local government with the capacity to sue and be sued in this Court.

## IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. The Plaintiffs seek to present erotic dance entertainment within the City of Milwaukee.

402. Erotic dance entertainment is constitutionally protected as expressive conduct.

403. Milwaukee's regulatory scheme, by which the City regulates the presentation of erotic dance entertainment within its borders, operates through more than one constellation of ordinances, only one of which is directly applicable to establishments that have liquor licenses.

404. A business that has, or that is seeking, a liquor license can apply for a tavern amusement license that, if granted, will entitle it to present cabaret performances. (City of Milwaukee Ordinance, § 90-33-1).

405. Such an application requires, among other things, that the applicant disclose the type of performances that will be presented "in order for the common council to determine whether or not the applicant's proposed operations are basically compatible with the normal activity of the neighborhood." (§ 90-35-2-b-5).

406. If anyone from a neighboring property objects to the proposed entertainment, the licensing committee must hold a hearing on the application. (§90-35-4-c).

407. Considerations relevant to approval, denial, or alteration of the proposed entertainment include noise, litter, traffic, parking, unruly patrons,

lewd and lascivious behavior and "like problems impacting on the health, safety and welfare of the neighborhood." (§ 90-35-4-c).

408.    There is no time limit within which an application for a tavern amusement license must be granted or denied.

409.    On July 29, 2009, in contemplation of seeking to present erotic dance entertainment, Plaintiff Ferol, LLC, (hereinafter, "Ferol") executed a lease for commercial premises at 117 West Pittsburgh Avenue, (hereinafter, "its location") in Milwaukee, Wisconsin.

410.    Its location is zoned IM, Industrial Mixed District.

411.    On July 31, 2009, Ferol filed its application for a Class B liquor license and tavern amusement (cabaret/night club) license at its location.

412.    The amusement/cabaret license identified the type of dance entertainment sought to be presented as "exotic dancing," in which minimally clad dancers would present erotic dance entertainment.

413.    There was immediate strong public opposition from the neighbors of its location to Ferol's application.

414.    Because of the ferocity of the opposition, Ferol withdrew its 2009 application for licenses in advance of the scheduled public hearing.

415. On August 10, 2010, Ferol again filed its application for a Class B liquor license and tavern amusement (cabaret/night club) license at its location, seeking to operate a cabaret named "Satin."

416. The amusement/cabaret license for Satin identified the type of dance entertainment sought to be presented as "exotic dancing," in which minimally clad dancers would present erotic dance entertainment.

417. On May 29, 2010, in contemplation of seeking to present erotic dance entertainment, Plaintiff Six Star Holdings, LLC (hereinafter, "Six Star") executed a lease for commercial premises at 730 North Old World Third Street, (hereinafter, "the location") in Milwaukee, Wisconsin.

418. The location is zoned C9E, Central Business District.

419. On August 10, 2010, Six Star filed its application for a Class B liquor license and tavern amusement (cabaret/night club) license at the location, seeking to operate a cabaret named "Silk East."

420. The amusement/cabaret license identified the type of dance entertainment sought to be presented as "exotic dancing," in which minimally clad dancers would present erotic dance entertainment.

421. On September 20, 2010, both Plaintiffs were required to attend a public hearing before the Milwaukee License Committee that was considering the license applications.

5

422. At the hearing on Ferol's application to open Satin as a cabaret offering exotic dance, many residents testified as to their opposition to the proposed entertainment and asked the Committee to deny the application.

423. The alderman of the district in which Satin would have been located, Alderman Jim Witkowiak, testified and admitted that the owners of Ferol "run a fine establishment on the west side."

424. Alderman Witkowiak also testified, "I think for a gentlemen's club, from all of the testimony and what I've seen, I've heard, they're probably the best operators for that kind of club that are around in comparison to the others. But it just doesn't fit in the neighborhood...."

425. Noting that it was his impression that, of people within a 1 ½ mile radius of the proposed site for Satin, 97% were opposed and 3 % were in favor, Alderman Witkowiak testified that he was opposed to Ferol's application.

426. At the conclusion of the public hearing, the License Committee voted unanimously to recommend denial of Ferol's application for a Class B liquor license and tavern amusement/cabaret license "based upon neighborhood objections related to parking and traffic and concerns related to the safety and welfare of the neighborhood."

427. In regard to Six Star's application to open Silk East as a cabaret offering exotic dance entertainment, many neighbors of the proposed location

testified as to their opposition to the proposed entertainment and asked the License Committee to deny the application.

428. The alderman of the district in which Silk East would have been located, Alderman Baumann, testified that "the management of Silk on the west side of Milwaukee seems to have a solid track record of providing a non-crime – in other words that they have an operation that has operated quietly and without a lot of crime and disorder."

429. Alderman Bauman further testified that there had been "overwhelming opposition" from his constituents in the neighborhood, and as he was attending the hearing "to represent their interests," he urged the License Committee not to grant Six Star's application.

430. At the conclusion of the public hearing, the License Committee voted unanimously to recommend denial of the Plaintiff Six Star's application for a liquor license and tavern amusement/cabaret license "based upon neighborhood testimony concerning factors detrimental to the health, safety and welfare of the neighborhood."

431. On September 21, 2010, the Common Council adopted the recommendations of the License Committee, and denied the Plaintiffs' applications for licensures.

7

432. On July 11, 2011, the Milwaukee License Committee considered the application of Robert Smith for a Class B Liquor License and Tavern Amusement License, seeking to operate a tavern, Rusty's Old 50.

433. Mr. Smith sought to open a tavern at 730 North Old World Third Street, the same address as that for which Six Star had sought a Class B Liquor License and Tavern Amusement License less than one year previously.

434. Mr. Smith did not seek to present exotic dance entertainment.

435. No neighbors appeared at the July 11, 2011 hearing to speak in opposition to Mr. Smith's application for licenses.

436. Alderman Baumann testified that he recommended approval of Mr. Smith's application for licenses.

437. The License Committee unanimously voted to recommend approval of the licenses for Mr. Smith, and the Common Council subsequently adopted the recommendations of the License Committee, and granted Mr. Smith's application for licenses.

438. The provisions of the zoning code that previously defined an "adult entertainment establishment" as a business that does not hold a liquor license but presents nude and other types of erotic dance entertainment and that required an adult entertainment establishment to obtain a special use permit were repealed July 23, 2011.

8

439. With the elimination of the adult entertainment establishment provisions of the zoning code, a business that seeks to present nude dance entertainment for an audience in Milwaukee may do so by applying for a theater license pursuant to Milwaukee Ordinance Chapter 83.

440. A copy of Milwaukee Ordinance Chapter 83 is attached hereto as Exhibit A and is hereby incorporated into this complaint by reference.

441. Six Star applied for a theater license on September 14, 2011 by filing an application for the license and the requisite filing fee at the office of the City Clerk.

442. Six Star seeks to operate as a theater at 730 North Old World Third Street in order to present erotic dance entertainment to an audience, without a liquor license.

443. Should Six Star prevail on its challenge to the liquor license/tavern amusement license ordinance, it would seek to convert the theater into a tavern that continued to offer erotic dance entertainment.

444. To date, the only response that Six Star has had to its license application from the City is a letter informing it that it needs an occupancy permit.

445. In the ordinary course of a license application within the City of Milwaukee, an unfulfilled requirement of an occupancy permit does not retard

9

the grant or denial of a license; once a license is granted, the license will not be issued until the occupancy permit is granted.

446. After Kim Garner, the license specialist in the city clerk's office, found that the property for which Six Star has applied is properly zoned for a theater, she passed the application for license on to the City Clerk.

447. The City Clerk referred the theater license application to the police department and neighborhood services for investigation and to the alderman for the district in which the proposed theater will be located.

448. There is no time limit in which the police are required to report back on an application for a theater license.

449. There is no time limit in which neighborhood services is required to report back on an application for a theater license.

450. The City Clerk does not schedule a theater license application for a hearing before the License Committee until she hears back from the alderperson to whom she referred the application in order to the give the alderperson an opportunity to conduct a neighborhood meeting or to meet with the applicant.

451. There is no limit on the time within which the alderperson is required to take whatever steps he or she decides to undertake in response to receipt of an application for theater license and then report back to the City Clerk.

Case 2:10-cv-00893-LA Filed 10/28/11 Page 10 of 19 Document 36

452. In this case, when the City Clerk referred Six Star's application to Alderman Bauman, he asked her to hold it without providing her with any specific information about what he would be doing.

453. As a result of Alderman Bauman's hold, Six Star's theater license application was not considered at the October meeting of the License Committee.

454. As a result of Alderman Bauman's hold, the earliest possible date on which Six Star's theater license application could possibly be considered is at the next meeting of the License Committee, on November 14, 2011.

455. The License Committee generally meets once each month.

456. If Alderman Bauman indicates to the City Clerk that he still wants the hold continued, the City Clerk will defer placing Six Star's application on the agenda until at least the December, 2011 License Committee hearing.

457. It is possible for an alderman to delay indefinitely an application for theater license from even reaching the License Committee because there are no time limits in which an application for a theater license must be referred from the office of the City Clerk to the License Committee.

458. But for the existence of Milwaukee Ordinance § 83.1, Six Star Holding, LLC, would have begun presenting erotic dance entertainment at 730 North Old World Third Street in August, 2011.

459. The City Attorney's office, through counsel representing the City of Milwaukee in this case, has recently taken the position that, in order to present erotic dance entertainment, one would have to apply for a license as a "Public Entertainment Club" pursuant to Milwaukee Ordinance Chapter 108 either in addition to or instead of obtaining a license as a theater under Milwaukee Ordinance Chapter 83.

460. A copy of Milwaukee Ordinance Chapter 108 is attached hereto as Exhibit B and is hereby incorporated into this complaint by reference.

461. The Plaintiffs have not made application under Chapter 108.

462. The Plaintiffs each wish to present erotic dance entertainment, but they decline to make application under Chapter 108 because the Public Entertainment Club ordinance is patently unconstitutional on its face.

463. But for the existence of Chapter 108, both Plaintiffs would now be offering erotic dance entertainment without liquor licenses.

## V. VIOLATIONS OF LAW

501. The City of Milwaukee's scheme of regulation of erotic dance entertainment expression constitutes a prior restraint that is unconstitutional on its face, in violation of the First and Fourteenth Amendments to the United States Constitution.

502. The City of Milwaukee's scheme of regulation of erotic dance entertainment expression constitutes a prior restraint that is unconstitutional as applied to the Plaintiffs, in violation of the First and Fourteenth Amendments to the United States Constitution.

503. The City of Milwaukee's scheme of regulation of erotic dance entertainment is unconstitutional because it subjects the presentation of constitutionally protected expression to a "heckler's veto" in violation of the First and Fourteenth Amendments to the United States Constitution.

504. The City of Milwaukee's regulatory scheme which requires the City to take into account public opinion prior to granting or denying permission for a tavern amusement license is invalid because, it is, in fact, a zoning regulation, and the City did not comply with the state law requirements in regard to the procedure required for amending existing zoning regulations; therefore it violates the first prong of the test for incidental regulation that limits free expression enunciated in *United States v. O'Brien*, 391 U.S. 367 (1968) in that the ordinances are not "within the power of the government," in violation of the First and Fourteenth Amendments to the United States Constitution.

505. The ordinances that govern tavern amusement licenses are overbroad on their faces and as applied in violation of the First and Fourteenth Amendments to the United States Constitution.

506. The ordinances that govern tavern amusement licenses are vague on their faces and as applied in violation of the First and Fourteenth Amendments to the United States Constitution.

507. The ordinances that govern tavern amusement licenses are unconstitutional prior restraints on expression on their face in violation of the First and Fourteenth Amendments to the United States Constitution in that they do not contain the requisite procedural safeguards enunciated by the Supreme Court in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) and its progeny.

508. The Plaintiffs have been denied liquor licenses as a result of discrimination against the erotic message that they sought to express in their taverns.

509. The ordinance that governs theater licenses is vague on its face and as applied in violation of the First and Fourteenth Amendments to the United States Constitution.

510. The ordinance that governs theater licenses is an unconstitutional prior restraint on expression on its face, in violation of the First and Fourteenth Amendments to the United States Constitution in that it does not contain the requisite procedural safeguards.

511. The ordinance that governs theater licenses has been unconstitutionally applied to Plaintiff Six Star Holdings, LLC in violation of the

First and Fourteenth Amendments to the United States Constitution in that the application has been subjected to unbridled discretion, including, but not limited to, delay in processing.

512. The ordinance that governs theater licenses is unconstitutional as applied because it subjects the presentation of constitutionally protected expression to a "heckler's veto" in violation of the First and Fourteenth Amendments to the United States Constitution.

513. The City's scheme for regulation of erotic dance entertainment is unconstitutional because it lacks an adequate factual basis on which to base a reasonable belief that any problem actually exists or that the challenged ordinances have been narrowly drafted to ameliorate such problem, in violation of the First and Fourteenth Amendments to the United States Constitution.

514. To the extent that the challenged ordinances may address a reasonable belief that the presentation of erotic dance entertainment is related to municipal problems, the challenged ordinances seek to reduce such problems by reducing protected expression, in violation of the First and Fourteenth Amendments to the United States Constitution.

515. The ordinances that govern public entertainment are facially unconstitutional prior restraints that fail to guarantee a decision within a brief and certain time period and that allow government officials unbridled restraint

15

in making the decision to grant or deny an application to present public entertainment.

## VI. DAMAGES AND EQUITY

### A. Damages

601. As a result of the denial of their applications for liquor license and tavern amusement/cabaret license, the Plaintiffs have suffered loss of freedom of expression and loss of business profits for which they seek an award of compensatory damages.

602. As a result of the delay on its application for a theater license, Plaintiff Six Star Holdings, LLC has suffered loss of freedom of expression and loss of business profits for which it seeks an award of compensatory damages.

603. As a result of the existence of the unconstitutional public entertainment ordinance, Plaintiffs have suffered loss of freedom of expression and loss of business profits for which they seek an award of compensatory damages.

### B. Equity

604. For the ongoing deprivation of their First Amendment rights, Plaintiffs have no plain, adequate, or speedy remedy at law and thus invoke the Court's equitable jurisdiction to award declaratory and injunctive relief against the Defendant.

## VII. CONDITIONS PRECEDENT

701. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII. DEMAND FOR JURY TRIAL

801. The Plaintiffs have demanded a trial by jury of all issues triable of right to a jury.

## IX. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that the Court grant judgment against the Defendant, awarding them:

901. A declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202 that the Milwaukee ordinances that regulate adult expression are facially unconstitutional regulations of expression, in violation of the Plaintiffs' rights protected by the First and Fourteenth Amendments to the United States Constitution and the rights of others not before the Court;

902. A permanent injunction enjoining Defendant, its agents, assistants, successors, employees, attorneys, and all persons acting in concert or cooperation with them or at their direction or under their control from enforcing the challenged ordinances, against the Plaintiffs and requiring the City to grant the Plaintiffs the liquor licenses they were denied as a result of discrimination based on the content of the expression they sought to present;

903. A permanent injunction enjoining Defendant, its agents, assistants, successors, employees, attorneys, and all persons acting in concert or cooperation with them or at their direction or under their control from enforcing the challenged ordinances, against the Plaintiffs and requiring the City to grant the Plaintiffs the licenses they need in order to present erotic dance entertainment;

904. A declaratory judgment, pursuant to 28 U.S.C. § 2201 and § 2202 that the City of Milwaukee theater license ordinance is unconstitutional on its face and as applied, in violation of the Plaintiffs' rights protected by the First and Fourteenth Amendments to the United States Constitution;

905. A declaratory judgment, pursuant to 28 U.S.C. § 2201 and § 2202 that the City of Milwaukee public entertainment license ordinance is unconstitutional on its face, in violation of the Plaintiffs' rights protected by the First and Fourteenth Amendments to the United States Constitution;

906. Monetary damages in an amount that will fairly compensate the Plaintiffs for their injuries;

907. Their costs, attorneys' fees and litigation expenses as well as any further relief this Court deems just.

Dated this 2nd day of November, 2011.

Respectfully submitted,

Six Star Holdings, LLC, and
Ferol, LLC,

Plaintiffs, By

THE JEFF SCOTT OLSON LAW FIRM, S. C.
ATTORNEYS FOR PLAINTIFF
Jeff Scott Olson
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, Wisconsin 53703
Phone   (608) 283-6001
Fax     (608) 283-0945
Email   JSOlson@scofflaw.com

/s/ Jeff Scott Olson
_____
Jeff Scott Olson

**Certificate of Service**

I hereby certify that on Wednesday, November 02, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Assistant City Attorneys Adam B. Stephens and Stuart Mukamal, Attorneys for the Defendants, and I hereby certify that I have mailed the document by United States Postal Service first class mail to the following non ECF participants: the Honorable Lynn Adelman.

/s/ Jeff Scott Olson
_____
Jeff Scott Olson

19

Case 2:10-cv-00893-LA   Filed 10/28/11   Page 19 of 19   Document 261