# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SIX STAR HOLDINGS, LLC**
**and FEROL, LLC**
        Plaintiffs,

    v.                                                                                 Case No. 10-C-0893

**CITY OF MILWAUKEE**
        Defendant.

---

## DECISION AND ORDER

In this case, Six Star Holdings, LLC and Ferol, LLC claim that several former City of Milwaukee licensing ordinances caused them to be deprived of their First Amendment right to present erotic dance entertainment. In my last opinion in this case, I granted the City's motion for summary judgment on the plaintiffs' claims involving the City's former "tavern amusement" licensing ordinance. See ECF No. 78. The effect of that ruling is that the plaintiffs are not entitled to damages for their inability to operate, during the time that the ordinance was in force, night clubs that both served alcoholic beverages and presented erotic dance entertainment. However, I granted plaintiff Six Star's motion for partial summary judgment on its claim involving the City's former "theater" licensing ordinance. Had Six Star been licensed to operate as a theater, it could have operated a "dry" gentlemen's club—one that presented erotic dance entertainment but did not serve alcoholic beverages. Six Star had applied for a license to operate as a theater, but the City allowed Six Star's application to languish for several months before finally repealing the theater licensing ordinance on March 1, 2012. I found that the City's failure to act on the application violated Six Star's rights and entitled it to damages for the period in which, but

for the City's unlawful conduct, Six Star would have been able to operate a dry gentlemen's club.

The remaining issue in this case (other than calculating Six Star's damages) is whether the other plaintiff, Ferol, may challenge the City's former theater ordinance and a related repealed ordinance governing "public entertainment clubs." Unlike Six Star, Ferol did not apply for a license that would have allowed it to operate a dry gentlemen's club. Also, in my last opinion, I observed that Ferol had submitted no affidavit or other evidence indicating that it had concrete plans to open a dry gentlemen's club (as opposed to a tavern) at its premises in the City of Milwaukee during the time when the theater and public entertainment club ordinances were in force. Thus, I questioned whether Ferol had standing to challenge the former ordinances but invited Ferol to submit further evidence showing that it did. In response to my invitation, Ferol has submitted a declaration from its managing partner, Jon Ferraro, which states that if Ferol did not have to apply for and obtain a license to operate a dry gentleman's club, it "would have immediately [i.e., in September 2010] opened such a club at 117 West Pittsburgh Avenue, for which premises Ferol held a 30 year lease." ECF No. 79 at ¶ 9. If this statement is true, Ferol would have standing to challenge the repealed ordinances: Ferol would have suffered an injury in fact that is fairly traceable to the ordinances and that is likely to be redressed by an award of damages. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

The City contends that this statement is not true and that Ferol would not have opened a dry gentlemen's club at its Pittsburgh Avenue location even if the ordinances did not require Ferol to apply for and obtain a license. However, for purposes of deciding the City's motion for summary judgment, I must accept Ferraro's statement as true. See, e.g.,

2

Payne v. Pauley, 337 F.3d 767, 770–73 (7th Cir. 2003). Of course, for purposes of deciding Ferol's motion for partial summary judgment, I cannot accept Ferraro's statement as true—the City is entitled to cross-examine Ferraro about his intentions and to introduce other evidence at trial in an effort to prove that Ferol would not have opened a dry gentlemen's club even if the licensing ordinances had not existed. But because at the summary-judgment stage of a case Ferol needs to do no more than point to evidence from which, at trial, I could conclude that it has standing, see Lujan, 504 U.S. at 561, I am satisfied that Ferol has standing to proceed further with its claims. I thus turn to the merits.

As noted, the former ordinances that Ferol challenges regulated "theaters" and "public entertainment clubs." The theater ordinance, which prior to March 1, 2012 appeared in Chapter 83 of the Milwaukee Code of Ordinances, stated that "[n]o person, firm or corporation . . . shall keep, maintain, conduct or operate for gain or profit, any theater or moving picture house in the city without first obtaining a license therefore." Code of Ordinances § 83-1-2 . The ordinance defined "theater" as "any edifice, or parts thereof, used for the purposes of dramatic or operatic or other exhibitions, plays or performances for admission to which remuneration or any other consideration is paid, charged or received." Id. § 83-1-1-b. The public entertainment club ordinance, which prior to March 1, 2012 appeared in Chapter 108 of the Milwaukee Code of Ordinances, stated that "[n]o person may conduct or operate public entertainment within the city without first securing either an annual license or permit therefor." Id. § 108-5-1-a. "Public entertainment" was defined as follows:

> any entertainment of any nature or description to which the public generally may gain admission, either with or without the payment of a fee. . . . This definition includes dances, shows and exhibitions provided for a fee including

3

plays, skits, musical revues, children's theater, dance productions, public dance, musical concerts, opera and the production or provision of sights or sounds or visual or auditory sensations which are designed to or may divert, entertain or otherwise appeal to members of the public who are admitted to a place of entertainment, which is produced by any means, including radio, phonograph, television, video reproduction, tape recorder, piano, orchestra or band or any other musical instrument, slide or movie projector, spotlights, or interruptible or flashing light devices and decoration.

Id. § 108-3-3.[1]

Ferol argues that both the theater ordinance and the public entertainment club ordinance were unconstitutional because they were prior restraints on speech that did not contain the required procedural safeguards. The safeguard on which Ferol focuses is the requirement that a licensing ordinance affecting speech contain a time limit for the licensing authority to render a decision on an application for a license. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 226 (1990) ("a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible"); see also Riley v. Nat'l Fed'n of the Blind, 487 U.S. 781, 802 (1988); City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 771 (1988); Freedman v. Maryland, 380 U.S. 51, 57–58 (1965). The City does not dispute that the ordinances did not contain any such time limits. See City's Supp. Br. at 7 ("Admittedly, the former Chapter 83 Theater and former Chapter 108 Public Entertainment Club licensing processes were without a defined time limit for consideration of a license application."). However, it argues that Ferol is not entitled to relief for two reasons.

---

[1] Holders of theater licenses were not required to also obtain public entertainment club licenses. See Code of Ordinances § 108-5-2-c (2010).

4

First, the City argues that because Ferol is mounting a facial attack on the former ordinances, it must show that there was no set of circumstances under which the ordinances could have been lawfully applied. See United States v. Salerno, 481 U.S. 739, 745 (1987). The City contends that Ferol cannot make this showing with respect to the public entertainment club ordinance because that ordinance, by its terms, applied to many establishments that offered forms of entertainment not protected by the First Amendment, such as pool halls and video-game arcades.² However, although Ferol describes its claim as a facial challenge, I do not think that that description is accurate. Facial challenges are brought when a plaintiff wants to invalidate a law in its entirety and obtain declaratory and injunctive relief against further enforcement of that law. See Bell v. Keating, 697 F.3d 445, 452–53 (7th Cir. 2012) (observing that, if a facial challenge is successful, the remedy must be injunctive and declaratory); Ezell v. City of Chicago, 651 F.3d 684, 697–99 (7th Cir. 2011) (same). In such cases, the plaintiff must show that the law is wholly invalid and cannot be constitutionally applied to anyone. Ezell, 651 F.3d at 698. In the present case, the ordinances have been repealed, and so declaratory relief and injunctive relief are not available. Moreover, in order to determine whether Ferol is entitled to damages, there is no need to inquire into whether the ordinances could have been lawfully applied to anyone other than Ferol. To obtain damages, Ferol needs to show only that the ordinances were unconstitutional as applied to it. Thus, although Ferol claims to be pursuing a facial challenge, in actuality the challenge is as-applied. Because the challenge is as-applied,

---

²It is not clear whether the City contends that the theater ordinance applied to forms of entertainment not protected by the First Amendment. However, the ordinance applied to "dramatic or operatic or other exhibitions, plays or performances," § 83-1-b, and the City has not identified any form of non-expressive activity that would fit within this definition. Thus, I assume that the City is not arguing that the theater ordinance applied to forms of entertainment not protected by the First Amendment.

5

the fact that the public entertainment club ordinance could have been lawfully applied to others is irrelevant. All that matters is that the ordinance imposed a prior restraint on Ferol's expressive activity and did not contain a time limit for the City to render a decision on whether Ferol would be permitted to engage in that activity. See, e.g., FW/PBS, 493 U.S. at 226. Thus, Ferol is entitled to damages for the period in which it refrained from engaging in such activity due to the ordinance's existence.

The City's second argument is that, despite the lack of time limits in the theater and public entertainment club ordinances, Ferol could have obtained judicial review under Chapter 68 of the Wisconsin Statutes, which provides, among other things, that a "final determination" made by a municipality with respect to a licensing application is reviewable by certiorari. See Wis. Stat. §§ 68.02 & 68.13. It is not clear why the City thinks Chapter 68 cures the problem with the theater and public entertainment club ordinances. The problem with those ordinances is that they contained no time limits for the City to render a decision on a license application. Chapter 68 does not impose any such any time limits; rather, it does not even apply until the municipality has rendered a "final determination" on an application. See Wis. Stat. §§ 68.12 & 68.13(1). Thus, Chapter 68 would not have prevented the City from delaying its decision on a license application indefinitely. Accordingly, Chapter 68 is irrelevant to Ferol's claims.

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that the City's motion for summary judgment on Ferol's claims involving the theater and public entertainment club ordinances is **DENIED**.

**IT IS FURTHER ORDERED** that Ferol's motion for partial summary judgment on its claims involving the theater and public entertainment club ordinances is **GRANTED** to the

6

extent that if Ferol establishes at trial that it would have operated a dry gentlemen's club but for the existence of the theater and public entertainment club ordinances, it will be entitled to recover damages for the period in which the ordinances prevented it from doing so.

**FINALLY, IT IS ORDERED** that an in-person status conference will be held on **September 27, 2013 at 3:00 p.m.** for the purpose of scheduling further proceedings.

Dated at Milwaukee, Wisconsin, this 28th day of August 2013.

s/ Lynn Adelman

LYNN ADELMAN
District Judge