*1081-2010-2885 DJ*

# Expert Witness Report for Accounting Matters

Paul A. Rodrigues, CFE, CPA, CFF, CGMA, MST
Principal, Chortek LLP
April 24, 2014

In the Matter of:

Six Star Holdings, LLC & Ferol, LLC v. City of Milwaukee

United States District Court Eastern District of Wisconsin,

Case No. 2:10-cv-00893-LA

April 24, 2014

To: Grant F. Langley
City Attorney
200 East Wells Street, Suite 800
Milwaukee, WI 53202-3551

Re: **EXPERT REPORT OF**

**PAUL A. RODRIGUES, CFE, CPA, CFF, CGMA, MST**

**ENGAGEMENT**

I was engaged by the City of Milwaukee to assist with accounting analysis, provide a written report, and serve as an expert witness for accounting in the matter of Six Star Holdings, LLC and Ferol, LLC v. City of Milwaukee, United States District Court, Eastern District of Wisconsin, case number 2:10-cv-00893-LA.

This report will address my analysis of the report submitted by Peters & Associates, S.C. regarding lost profits allegedly suffered by the Plaintiffs in the matter of Six Star Holdings, LLC et. al. v. City of Milwaukee.

See Exhibit 35 for the information I have requested and received to date. All information used can be found in the attached exhibits.

**QUALIFICATIONS**

Mr. Rodrigues has over 24 years of accounting experience, is a Certified Public Accountant, is a Certified Fraud Examiner, is Certified in Financial Forensics, is a Chartered Global Management Accountant, and has a Masters degree in Taxation. Mr. Rodrigues is principal of Chortek LLP ("Chortek") and heads up the fraud and litigation support practice. His experience is more fully described in his curriculum vitae shown in Exhibit 0.

Chortek is a full-service certified public accounting and consulting firm which has been in business over 65 years and specializes in commercial and governmental audits, reviews, compilations, tax returns, valuations, fraud and litigation support, and hardware and software IT services. In addition to Mr. Rodrigues, the firm has other professionals who are Certified Fraud Examiners and Certified in Financial Forensics.

1 | P a g e

Case 2:10-cv-00893-LA    Filed 01/16/15    Page 2 of 16    Document 99-1

## BACKGROUND

The Plaintiffs sought to open a "gentlemen's club" at 117 West Pittsburgh Avenue in Milwaukee, WI. The prospective business would allegedly have been operated as a "theater" which featured exotic dancers in an alcohol-free environment. Although an application was never formally submitted to the City of Milwaukee ("City"), Plaintiffs contend[1] such an application would likely have been approved and failure to obtain the permit from the City caused them to suffer lost profits which would have been earned at the Pittsburgh Avenue location. John Peters of Peters & Associates, S.C. ("Peters") prepared a report dated December 13, 2013 which concludes if the hypothetical club had been opened, it would have realized profits of $1,116,500 during the period September 2010 through March 2012.

This report examines Peters' conclusion that lost profits were suffered by the Plaintiffs.

## EXECUTIVE SUMMARY

Based on the following analysis, it is my professional opinion that the Plaintiffs did not suffer any lost profits or other economic damages by not opening the Pittsburgh Club. In fact, had the club opened, it would have operated at a loss. The Plaintiffs therefore received an economic benefit by not opening the club.

## CONCLUSIONS AND ANALYSIS

### Conclusion 1: There Are No Economic Damages Due

Mr. Peters invoked multiple assumptions which are demonstrably false and he failed to consider various factors bearing upon customer revenue benchmarks, the nature and sources of revenue, and relevant profit margins. Collectively, these conditions render Mr. Peter's report unreliable and resulted in a significant overstatement of lost profits. Adjusting for these errors within the methodology[2] used by Mr. Peters indicates the Plaintiffs did not suffer any economic damages. In fact, the absence of alcohol sales would preclude Silk from turning a profit. See Exhibit 1.

### Conclusion 2: Mr. Peters Used an Inappropriate Benchmark for Customer Revenue

In section five, page three, of his report, Mr. Peters references a survey conducted by Plaintiffs' counsel, The Jeff Scott Olson Law Firm, S.C., titled, <u>2013 Nationwide Survey of Adult Clubs</u>

---

[1] Contention appears to be based on the Decision and Order by the Honorable District Judge Lynn Adelman, see Exhibit 37, page 22.
[2] Chortek evaluated components of Peters' calculation but not the methodology he used. Chortek does not necessarily agree with Peters' methodology.

Case 2:10-cv-00893-LA   Filed 01/16/15   Page 3 of 16   Document 99-1

That Do Not Serve Alcohol (Exhibit 13) and notes that "...these clubs charged more for admission; and often had a drink minimum[3]." He further asserts that "The approximate revenue derived from these two charges at the surveyed clubs was $20/customer..."

While the criteria Mr. Peters applied to evaluate the frequency of surveyed drink minimums is unclear, the data simply does not support his conclusion. Seventy clubs were surveyed and six of them are no longer in business or served alcohol. These clubs have no meaningful relationship to the club at issue and should be excluded from further consideration. Twenty clubs stated they did not have a drink minimum and nineteen clubs did not confirm whether a drink minimum existed. The remaining twenty five clubs did have a drink minimum. Thus, contrary to Mr. Peters' assertion that such clubs "often" had a drink minimum, the data indicates that condition existed in less than half the respondents (see Exhibit 11). *[handwritten: It doesn't incl. 19 that refused to answer]*

Second, Mr. Peters' calculations are based on an estimate of admission and drink revenue equal to $20 per customer. Our analysis indicates Mr. Peters' estimate is overstated by $.72 per customer (see Exhibit 11). While this amount may seem trivial, when multiplied by the number of "lost" patrons, it overstates revenue by more than $55,000.[4]

More importantly, Mr. Peters assumes the cost of admissions in the surveyed communities is representative of the cost of admissions in Milwaukee. Yet, none of the respondents are proximal to the market at issue and many of them are concentrated in areas which are associated with a different cost of living index than Milwaukee. When Peters' estimate is adjusted for the local cost of living index, revenue per customer falls by 17% from $19.28 to $16.01 (see Exhibit 10).

## Conclusion 3: Mr. Peters Failed to Consider the Financial Impact of Complementary Admissions

Not every customer who enters the club pays a cover charge; some are admitted for free. Industry norms provide for complementary admissions ("comps") as a means to promote the business or entice recipients to spend money. This condition results in a lower revenue per admission than what would have been received had all customers actually paid. For example, the Maitre'D report shows that annual attendance in 2010 and 2011 is 68,798 and 68,451, respectively (see Exhibit 18). The Analysis of 2010 Silk Exotic Revenue Per Customer indicates that admission revenue is $288,354; and the corresponding 2011 schedule represents admission revenue was $358,899 (see Exhibits 14 and 16). Average cover charges are therefore $4.19 and $5.24 per customer in 2010 and 2011, respectively (see Exhibits 14 and 16).

However, Mr. Ferraro represented that Silk charges $5 during the day, $10 at night, and $15 for special events (see Exhibit 9). Adopting Mr. Ferraro's benchmarks implies average cover

---

[3] "Drinks" in this context should be understood to be non-alcoholic beverages.
[4] .72 * 1,000 patrons * 77 weeks = $55,440.

charges are approximately $10 per customer. If each customer, on average, should have paid $10 to enter the club, but the club only received $4 – $5 per person, the only reasonable explanation for the difference is the presence of "comped" tickets in the Maitre'D report[5]. This means the club generally collects about 50% of the average ticket price.

Mr. Peters' estimate of $20 per customer is twice as large as the amount attested to by Mr. Ferraro and is 4-5 times larger than the average ticket prices derived from the Maitre'D report. Although Mr. Ferraro may assert a cover charge "premium" is necessary to offset lost alcohol revenues, and Mr. Peters appears to have concluded the survey results corroborate Mr. Ferraro's intent, it is unlikely that the Milwaukee marketplace will accommodate Mr. Ferraro's plans. In fact, the cover charge collection rates at Silk Exotic Milwaukee clearly indicate the proposed club would not collect, on average, $20 per customer. Therefore, Mr. Peters' estimate erroneously inflates customer revenue by failing to consider the financial impact of complementary admissions.

When the collection rates derived from the Maitre'D report are applied to the cost-of-living adjusted amount in Conclusion 2, revenue per customer falls by 62% to $7.55 (see Exhibit 6).[6]

**Conclusion 4: Mr. Peters Failed to Identify and Adjust for All Alcohol-Related Sales**

Mr. Peters' analysis of revenue generated by alcohol at Exhibit 5 fails to identify and adjust for all alcohol related sales at existing operations. For example, Mr. Peters did not exclude "Bar Modifier Sales". Per Exhibit 7, "bar modifiers" consist of cocktail ingredients which would not be sold in a non-alcoholic environment[7].

Additionally, Mr. Peters failed to apportion Champagne Room revenue between alcoholic and non-alcoholic components. Per Exhibit 8, Champagne Rooms can be purchased for $300. This price includes a half hour with a dancer and bottle of Cristal champagne. My research indicates Cristal champagne retails for about $200 per bottle (see Exhibit 8). Collectively, these conditions imply two-thirds of Champagne Room revenue consists of alcohol sales. Mr. Peters fails to make this distinction or adjust for it in his calculations.

According to Exhibits 15 and 17, Champagne Room revenue generated $397,100 and $360,100 in 2010 and 2011, respectively. Although a separate work paper supporting Mr. Peters' analysis of 2010 components has not been provided to Chortek, were the aforementioned alcohol sales

---

[5] Chortek assumes the Maitre'D report provided by Plaintiffs' counsel is materially accurate as it relates to the quantity of admissions. See Exhibits 14 and 16.
[6] Revenue per customer consists of cover charges and drink minimum sales. Chortek assumes drink minimum sales are generally collected at the door and therefore properly included as a component of admission revenue.
[7] It is unclear if this oversight resulted in a misstatement to Peters' estimate of damages. The work paper at issue has no clear relationship to amounts included in his report and does not directly support his opinion.

properly adjusted on Exhibit 5, Mr. Peters' estimate of the related revenue by customer would fall by $4.47 (Entertainment Related Revenue: $19.00 - $14.53 = $4.47, see Exhibit 2).

**Conclusion 5: Mr. Peters Assumed Total Revenue of $50 per Customer**

In his Response to Interrogatory No. 12 on page 2 of Exhibit 4, Mr. Peters affirms he based the components of his damage calculations at Exhibit 3 upon an analysis of 2010 and 2011 revenues similar to that included on Exhibit 5. Although Mr. Peters' analysis of 2010 revenues has not been provided, it appears several damage components at Exhibit 3 are based primarily on 2010 data without reference to 2011 data and this condition inflates Peters' estimate of "lost profits" (see Exhibits 14 and 16; and related profit margin analysis at Exhibits 20 and 21).

Furthermore, the damage components analyzed by Mr. Peters aggregated to $46 per customer (see Exhibit 4). Yet, on page 2 of his Response to Interrogatory No. 12 at Exhibit 4, Mr. Peters asserts that the damage components total $50 per customer and he uses this figure as a basis for calculating lost profits (see Exhibit 3). Mr. Peters does not reconcile this discrepancy and in section five of his report he states, "After considering the longer hours available to the prospective Ferol, LLC operation (and the assumption that longer hours = longer revenue) and the possibility that added non-alcohol beverage would be purchased above the minimum, we believe that $50/customer is an attainable level of revenue…"

In other words, Mr. Peters assumes each customer would generate an additional $4 of revenue but does not provide any meaningful support or analysis for that assumption. Nor is there any evidence that he considered whether this amount would have resulted in additional costs.

The basis for an additional $4 of incremental revenue per customer is therefore without merit and should not be included as a component of damages.

**Conclusion 6: Mr. Peters Applied an Inflated Profit Percentage to Calculated Damages**

On page 4 of Mr. Peters' report, "Lost Sales" is reduced by 71% to arrive at "Lost Profits." However, the referenced profit margin (29%) corresponds to the combined margin realized by "Jokerz" (a separate business) and "Silk Exotic" (see Exhibit 20). The latter is a well-established business that serves alcohol. Neither of those conditions is present in the proposed location on 117 West Pittsburgh. Mr. Peters expends no efforts to adjust the profit margin at issue for the presence of Jokerz or alcohol sales. Nor does he relate the 2010 profit margin to the 2011 profit margin.

Had Mr. Peters adjusted for these conditions, Silk Exotic Milwaukee (and by extension, the Pittsburgh Club) would operate at a net loss (see Exhibits 20 and 21). This disparity in profit margins is also present at the Middleton and Juneau locations. Pursuant to the analysis at

Exhibits 22, 24, 26, and 28, alcohol sales are essential to turn a profit and without them, the current cost structure results in a net loss at each location[8].

Mr. Peters' failure to adjust the profit margin for Jokerz activity and alcohol-related revenue grossly overstates the actual profit margin which would have been realized by the hypothetical Pittsburgh Club. In fact, it misrepresents the hypothetical location as a profitable business, when it fact, it would not have been one (see Exhibit 1).

### Conclusion 7: Peters' Wrongly Represents that His Report is Conservative

On page four of his report, Mr. Peters states, "Our findings are also likely conservative in the determination of the profit ratio of 29%. We assumed that the new Silk Exotic facility downtown would incur the full complement of costs as its sister facilities, and ignored synergies that could be achieved..." (see Exhibit 3). Apart from the factual inaccuracy discussed at Conclusion 6, Mr. Peters invokes an ambiguous concept of "synergies" and assumes that the combined business group could share certain management, administrative, or advertising costs, which presumably may result in a lower cost structure for the group as a whole. Mr. Peters simply confers an intangible economic benefit to the proposed club apart from any supporting analysis to corroborate whether this expectation is factually sound. Although Mr. Peters does not say such synergies *would* be achieved, a straight forward reading of his comments implies that this condition is a real possibility, which treads dangerously close to buttressing his opinion by facts not in evidence.

Finally, Mr. Peters' analysis fails to consider the nature or extent of "revenue cannibalization" from one Milwaukee location to another. Certain patrons of Silk Exotic Milwaukee may elect to move their business to the West Pittsburgh location such that the net economic impact on the combined business unit is effectively zero. I believe it is reasonable to assume some volume of business transfers would occur, but Mr. Peters does not address this issue or discount his estimate of lost profits for it.

Taken together, the errors and omissions discussed in the foregoing Conclusions and those of this section clearly indicate Mr. Peters' estimate of lost profits is anything but conservative and is not consistent with the facts at hand.

### Other Questions, Uncertainties, and Potential Irregularities

Mr. Peters' calculation of lost profits is based on a 77 week damage period commencing September 20, 2010 (see page 4, Exhibit 3) and Mr. Peters does not address the assumption of a 77 week damage period.

---

[8] Silk Exotic Juneau is operating at a loss even with the sale of alcohol. See Exhibits 27 and 29.

6 | P a g e

In addition, all of the information I requested in order to perform my analysis has yet to be provided. See Exhibit 35 for a listing of my requests and the corresponding production status.

## CONCLUSION

It is my professional opinion that there are no economic damages in this matter.

Subject to the reliability of the data provided, my opinions are rendered to a reasonable degree of accounting certainty.

I reserve the right to amend this report based on additional discovery and new information being provided.

Sincerely,

*Paul A. Rodrigues*

Paul A. Rodrigues, CFE, CPA, CFF, CGMA, MST
Principal – Forensic Accounting and Litigation Support Services
Chortek LLP

# Six Star Holdings, LLC and Ferol, LLC v. City of Milwaukee

## Exhibit Index

| Exhibit Number | Exhibit Name |
| --- | --- |
| 0 | Curriculum Vitae of Paul A. Rodrigues, CPA, CFE, CFF, CGMA, MST |
| 1 | Calculation of Hypothetical Net Loss Not Incurred |
| 2 | Analysis of Peters & Associates, S.C. Damage Calculation |
| 3 | Peters & Associates, S.C. Report of Lost Profits |
| 4 | Plaintiff's Response to Interrogatory #12 |
| 5 | Peters & Associates, S.C. Initial Attempt to Segregate Alcohol Profit |
| 6 | Analysis of Admission Revenue Collection Rate |
| 7 | Bar Modifier Research |
| 8 | Champagne Room Research |
| 9 | Statements Made by Mr. Ferraro during Class B Tavern and Public Entertainment License Hearing on June 1, 2012 |
| 10 | Average Admission Revenue Per Customer Analysis |
| 11 | Summary Analysis of the 2013 Nationwide Survey of Adult Clubs That Do Not Serve Alcohol |
| 12 | CNNMoney Cost of Living Calculator |
| 13 | 2013 Nationwide Survey of Adult Clubs That Do Not Serve Alcohol |
| 14 | Analysis of 2010 Silk Exotic Revenue Per Customer |
| 15 | 2010 Silk Exotic Milwaukee Income Statement |
| 16 | Analysis of 2011 Silk Exotic Revenue Per Customer |
| 17 | 2011 Silk Exotic Milwaukee Income Statement |
| 18 | Summary Analysis of Maitre'D Reports |
| 19 | Monthly Maitre'D Reports |
| 20 | Analysis of 2010 Silk Exotic Milwaukee Profit Margin |
| 21 | Analysis of 2011 Silk Exotic Milwaukee Profit Margin |
| 22 | Analysis of 2010 Silk Exotic Middleton Profit Margin |
| 23 | 2010 Silk Exotic Middleton Income Statement |
| 24 | Analysis of 2011 Silk Exotic Middleton Profit Margin |
| 25 | 2011 Silk Exotic Middleton Income Statement |
| 26 | Analysis of 2010 Silk Exotic Juneau Profit Margin |
| 27 | 2010 Silk Exotic Juneau Income Statement |
| 28 | Analysis of 2011 Silk Exotic Juneau Profit Margin |
| 29 | 2011 Silk Exotic Juneau Income Statement |
| 30 | Analysis of 2010 Silk Exotic Milwaukee Expenses Per Customer |
| 31 | Analysis of 2011 Silk Exotic Milwaukee Expenses Per Customer |
| 32 | Peters & Associates, S.C. Work Paper |
| 33 | Not Used |
| 34 | Not Used |
| 35 | Status of Documents Requested |
| 36 | Not Used |
| 37 | Six Star Holdings, LLC, et. al. v. City of Milwaukee Decision and Order |
| 38 | Average Revenue per Customer Analysis |
| 39 | Average Expense per Customer Analysis |





# CURRICULUM VITAE
Paul A. Rodrigues, CPA, CFE, CFF, CGMA, MST
Principal – Forensic Accounting & Litigation Support Services
Chortek LLP | p: 262-337-0458, e: par@chortek.com

Paul A. Rodrigues has over 24 years of experience in the accounting profession and head's up Chortek's fraud and litigation support practice. Paul has served as an expert witness or consultant in numerous forensic, fraud, and litigation engagements ranging from $1 million to $250 million and has testified in both Federal and State courts.

## Professional Experience

Paul has been involved with potential or actual civil and criminal litigation, including but not limited to:

- Accounting expertise in the legal system
- Accounting malpractice
- Asset tracing
- Bankruptcy & Insolvency
- Business valuations
- Conflicts of interest
- Contract disputes
- Determination of lost profits and economic damages
- eDiscovery & Data Mining
- Forensic Imaging
- Internal control assessments
- Federal and state tax audits
- Financial statement fraud
- Embezzlements
- Fraudulent transfers
- Generally Accepted Accounting Principles (GAAP)
- Generally Accepted Auditing Standards (GAAS)
- Generally Accepted Government Auditing Standards (GAGAS)
- Locating hidden assets
- Insurance claims
- Liquidations
- Minority shareholder disputes
- Over/Understatements of expenses and losses
- Over/Understatements of revenue and other income
- Partnership and LLC issues
- Corporate restructuring
- Seller misrepresentations
- Settlements and recovery structuring
- Shareholder and employee fraud
- Suspect Interviews & Investigations/Obtaining Confessions
- Tax Fraud
- Theft by Contractor

## Professional Qualifications

- MST – Masters of Science Taxation, 1994
- CPA-Certified Public Accountant in WI since 1994
- CFE-Certified Fraud Examiner since 2008
- CFF-Certified Financial Forensics since 2008
- CGMA – Chartered Global Management Accountant

## Education

UW-Milwaukee, 1994
Milwaukee, WI
Masters in Taxation,
President - Student Tax Association

UW-Madison, 1986
Madison, WI
BA, Majors: Economics, International Relations, minor in Finance

N16W23217 Stone Ridge Drive, Suite 350 | Waukesha, WI 53188 | Phone: 262.522.8227 | Fax: 262.522.8228
MILWAUKEE, WI | CHICAGO, IL | WASHINGTON, DC | APPLETON, WI
www.chortek.com

Case 2:10-cv-00893-LA    Filed 01/16/15    Page 10 of 16    Document 99-1    Page 1 of 7



### Relevant Experience

- Litigation claims arising from fraud and occupational abuse within the banking, construction, real estate, manufacturing, retail, and professional service industries, including fraudulent financial reporting, embezzlements, and conflicts of interest.
- Litigation claims arising from accounting malpractice, minority shareholder and partner disputes, contract disputes, acquisition disputes, damages & lost profits, divestures and divorce matters.
- Litigation claims arising from internal audit failures.
- Corporate liquidations, restructurings, and receiverships.
- Litigation claims arising from bankruptcy matters.
- Coordinating forensic computer images and eDiscovery efforts.
- Federal and state tax fraud claims.
- Contested business valuations and seller misrepresentations.
- Fraud suspect investigations and interviews.
- Assist Special Agents with the US Department of Labor, Office of Labor Racketeering and Fraud Investigations, and the US DOJ.
- Appointment as forensic accounting examiner by the US Bankruptcy Court.

### Seminars/Webinars

- Panel, *Industry Summit: Fraud Prevention*, Associated Bank, ACG Wisconsin, Chortek LLP (10/08)
- Presenter, *Understanding Business Fraud,* Town Bank of Hartland, Hartland, WI (2/09)
- Presenter, *The Reality of Business Fraud,* First Business Bank-Milwaukee, Milwaukee, WI (5/09)
- Presenter, *Understanding Business Fraud*, Dewitt, Ross & Stevens; Town Bank of Madison, Madison, WI (5/09)
- Co-Presenter, *Reality of Business Fraud*, First Business Bank-Madison, WI (6/09)
- Co-Presenter, *Best Practices, Mitigating Asset Misappropriation*-Waukesha, WI (7/09)
- Co-Presenter, *Business Fraud*, Libertyville Bank-Libertyville, IL (9/09)
- Presenter, *The Reality of Business Fraud*, Milwaukee NARI Home Improvement Council, Wauwatosa, WI (9/09)
- Co-Presenter, *The Reality of Business Fraud*, Wisconsin Treasury Management Association (WTMA), Appleton, WI (9/09)
- Co-Presenter, *Business Fraud*, M3 Insurance Solutions for Business (9/09)
- Co-Presenter, *Fraud Protection Strategies*, Wells Fargo, Milwaukee, WI (10/09)
- Co-Presenter, *Fraud*, Northbrook Bank, Northbrook, IL (10/09)
- Co-Presenter, *Business Fraud,* NorthShore Bank, Skokie, IL (10/09)
- Co-Presenter, *Fraud,* DeWitt, Ross & Stevens, Town Bank, IRS, Brookfield, WI (10/09)
- Co-Presenter, *Understanding Fraud*, State Bank of Lakes, Antioch, IL (11/09)
- Co-Presenter, *Understanding Fraud*, Chase Bank, Brookfield, WI (11/09)



- Presenter, *Business Fraud*, Wisconsin Institute of Certified Public Accountants (WICPA) Conference, Waukesha, WI (11/09)
- Co-Presenter, *The Expert's Role in the Litigation Process*, AICPA Forensic and Valuation Services webinar (12/09)
- Co-Presenter, *The Reality of Business Fraud*, Brookfield Chamber Education Committee and University of Phoenix – Milwaukee Campus presented and sponsored seminar (4/10)
- Co-Presenter, *The Reality of Business Fraud*, University of Phoenix – Milwaukee, WI (4/10)
- Presenter, *Business Fraud*, The IMA Financial Group, Inc. – Milwaukee, WI (5/10)
- Presenter, *Understanding Business Fraud*, Town Bank & Fitzgerald, Clayton, James & Kasten – Hartland, WI (5/10)
- Co-Presenter, *The Reality of Business Fraud*, Wisconsin Treasury Management Association (WTMA), Waukesha, WI (9/10)
- Panel, *Business Fraud Roundtable*, Associated Bank, Waukesha, WI (11/10)
- Presenter, *Business Fraud Exposed*, Bank Mutual, Wauwatosa, WI (3/11)
- Presenter, *Fraud and Forensic Accounting*, Wisconsin Lutheran College, Wauwatosa, WI (5/11)
- Presenter, *Forensic Accounting: Identifying Fraud*, CLE class for Attorneys, Milwaukee Bar Association, Milwaukee, WI (6/11)
- Presenter, *Fraud Happens – A lot*, University Club, Milwaukee, WI (9/11)
- Presenter, *Bank Mutual's 2011 Fraud and Risk Management*, Wisconsin Club, Milwaukee, WI (11/11)
- Presenter, *Johnson Bank, Fraud and Risk Management*, Johnson Bank, Milwaukee, WI (2/12)
- Presenter, *Fraud Happens*, Milwaukee NARI Home Improvement Council, Wauwatosa, WI (5/12)
- Presenter, *Fraud Happens -A lot*, Windy City Summit, Chicago, IL (6/12)
- Presenter, *Fraud Happens -A lot*, NARI Council, Madison, WI (9/12)
- Presenter, *Fraud is Afoot Watson*, Maryland Association of CPAs, College Park, MD (4/13)
- Presenter, *Fraud Happens -A lot*, Windy City Summit, Chicago, IL (5/13)
- Presenter, *Analyzing Financial Statements*, CLE class for Attorneys, NBI, Madison, WI (6/13)
- Presenter, *Identifying Fraud, Analyzing Financial Statements CLE classes for Attorneys*, NBI, Madison, WI (6/13)
- Presenter, *Predictive Coding and eDiscovery*, Preserving and Locating Critical ESI section, 2013 Construction Super Conference, San Francisco, CA (12/13)
- Presenter, *Beware Fraud is Everywhere*, Northeastern Wisconsin Chapter AITP (Association of Information Technology Professionals), Appleton, WI (2/14)

INVESTIGATE | REPORT | TESTIFY



## Articles/Publications

- *Don't Miss out on the New Tax Credit for Home Builders!*
  Building Blocks, Newsletter of the Metropolitan Builders Association (MBA) January, 2007 Volume 3, Issue 1
- *The #1 Reasons Employees Commit Fraud*
  C&G Connection Newsletter April, 2008 Issue
- *The #1 Method of Payroll Fraud*
  C&G Connection Newsletter May, 2008 Issue
- *How Can My Company Avoid Being A Victim Of Employee Theft?*
  co-author, BizTimes Milwaukee April, 2009
- *Who Do You Know Has Fraud?*
  C&G Connection Newsletter June, 2009 Issue
- *Investigations Best Practices*
  contributor, CPA Expert Winter 2010 Issue
- *Serving as an Expert Witness or Consultant*
  co-author, Practice Aid 10-1, AICPA Forensic and Valuation Services Section August 2010
- *Theft by Fraud in the Workplace*
  co-author, Wisconsin Law Journal October 2010
- *Strategic Approach for Maximizing Recovery in a Fraud Case*
  co-author, The Fraud Examiner Newsletter, Association of Certified Fraud Examiners January 2011
- *Auditing vs. Fraud Examination - What's the difference?*
  C&G Forensic Connection Newsletter, First Quarter 2011 Issue
- *The Mindset of a Fraud Examiner*
  C&G Forensic Connection Newsletter, Second Quarter 2011 Issue
- *Catching a Snake in the Grass*
  C&G Forensic Connection Newsletter, Second Quarter 2012 Issue
- *Avenues of Recovery*
  C&G Forensic Connection Newsletter, Third Quarter 2012 Issue
- *Catching a Snake in the Grass: Why an Impulse Reaction is Rarely the Best Strategy,* The Fraud Examiner Newsletter, Association of Certified Fraud Examiners October, 2012
- *Avenues of Recovery*
  C&G Forensic Connection Newsletter, Fourth Quarter 2012 Issue
- Recovering Damages from Devious Perpetrators
  American Bar Association, Section of Litigation, January 2013



### Specialized Education

AICPA-American Institute of Certified Public Accountants
09/2005 National Conference on Fraud and Litigation Services; Dallas, TX

ACFE-Association of Certified Fraud Examiners
02/2008 Exam Review Course; Austin, TX
07/2008 19th Annual ACFE Fraud Conference; Boston, MA
07/2009 20th Annual ACFE Fraud Conference; Las Vegas, NV
07/2010 21st Annual ACFE Fraud Conference; Washington DC
06/2011 22nd Annual ACFE Fraud Conference; San Diego, CA
06/2012 23rd Annual ACFE Fraud Conference; Kissimmee, FL
06/2013 24rd Annual ACFE Fraud Conference; Las Vegas, NV

CPE-Link
12/2012 The Yellow Book Interpreted, Generally Accepted Government Auditing Standards

MBA - Milwaukee Bar Association
11/2011 Prosecution of Health Care Fraud and Abuse Cases, Milwaukee, WI
11/2011 Fourth Annual E Discovery Conference, Milwaukee, WI

WISBAR – State Bar of Wisconsin
12/2011 How to Understand and Analyze Financial Statements for Lawyers, Milwaukee, WI
04/2012 Bridging the Valuation Gap: "Earnouts" & Other Techniques, Web
04/2012 Construction Contracts: Anticipating the Unanticipated, Web
06/2012 2012 Litigation, Dispute Resolution & Appellate Practice, Wisconsin Dells, WI

ABA – American Bar Association
02/2012 iPad for Litigators
02/2012 White Collar Crime Annual Conference, Miami, FL
04/2012 Litigation Annual Conference, Washington DC
09/2012 Fall Leadership Committee Workshop- Construction Litigation, St. Louis, MO
04/2013 Litigation Annual Conference, Chicago, IL
12/2013 Construction Super Conference, San Francisco, CA

### Professional Memberships, Past and Present

ABA – American Bar Association
- Criminal Justice Section
- Section of Litigation
- Construction Section Leadership Committee

ACFE-Association of Certified Fraud Examiners
AICPA-American Institute of Certified Public Accountants
- AICPA Litigation Services Task Force
- Currently designated CFF Champion for the State of Wisconsin

WICPA-Wisconsin Institute of Certified Public Accountants
AGC-Associated General Contractors of America
ASA-American Subcontractors Association
Surety Association of Wisconsin
MBA-Metropolitan Builders Association

INVESTIGATE | REPORT | TESTIFY



Federal Rule 26(a)(2)(B)
List of Cases in which, during the previous 4 years
Testimony given at Trial or Deposition:

- 11/20/09 - CR Meyer and Sons Company vs. Custom Mechanical, Case 31 110 Y 00156 07
- 04/21/10 – CAM Recycling & Materials, Inc., Debtor, United States Bankruptcy Court, Eastern District of Wisconsin, Case Number: 09-25303
- 08/24/10 - CR Meyer and Sons Company vs. Custom Mechanical, Case 31 110 Y 00156 07
- 09/30/10 - CR Meyer and Sons Company vs. Custom Mechanical, Case 31 110 Y 00156 07
- 12/09/10 – Raab Mechanical, Inc. and Rudolph Raab, v. MTM Mechanical Services, Inc. and Mark Swiecichowski, State of Wisconsin, Circuit Court, Waukesha County, Case No. 10-CV-01370
- 2/11/11 - Jendusa Engineering Associates, Inc., et al. v. Sarah Mulhern, et al., State of Wisconsin, Circuit Court, Waukesha County, Case No. 09-CV-1785
- 3/16/11 - Jendusa Engineering Associates, Inc., et al. v. Sarah Mulhern, et al., State of Wisconsin, Circuit Court, Waukesha County, Case No. 09-CV-1785
- 7/6/11 - Jendusa Engineering Associates, Inc., et al. v. Sarah Mulhern, et al., State of Wisconsin, Circuit Court, Waukesha County, Case No. 09-CV-1785
- 3/7/12 - Michael Brandt, Heidi Brandt, and Barbara Begale, vs. Joe's Crushing, LLC, Cream City Wrecking & Dismantling, and Joseph Tate State of Wisconsin, Circuit Court, Waukesha County, Case No.: 11-CV-00816
- 3/13/12 - Michael Brandt, Heidi Brandt, and Barbara Begale, vs. Joe's Crushing, LLC, Cream City Wrecking & Dismantling, and Joseph Tate State of Wisconsin, Circuit Court, Waukesha County, Case No.: 11-CV-00816
- 4/04/12 - U.S. Dept. of Justice, Office of the United States Trustee – Fisca Oil Co., Inc., Debtor, United States Bankruptcy Court, Eastern District of Wisconsin Case No,: 09-21519-PP
- 5/16/13 - U.S. Dept. of Justice, Office of the United States Trustee – Joseph G. Miller, Debtor, United States Bankruptcy Court, Eastern District of Wisconsin Case No,: 12-32487-MDM
- 7/9/13 - U.S. Dept. of Justice, Office of the United States Trustee – Joseph G. Miller, Debtor, United States Bankruptcy Court, Eastern District of Wisconsin Case No,: 12-32487-MDM
- 9/18/13 - U.S. Dept. of Justice, Office of the United States Trustee – Fisca Oil Co., Inc., Debtor, United States Bankruptcy Court, Eastern District of Wisconsin Case No,: 09-21519-PP
- 9/25/13 - U.S. Dept. of Justice, Office of the United States Trustee – Joseph G. Miller, Debtor, United States Bankruptcy Court, Eastern District of Wisconsin Case No,: 12-32487-MDM
- 11/14/13 - U.S. Dept. of Justice, Office of the United States Trustee – Joseph G. Miller, Debtor, United States Bankruptcy Court, Eastern District of Wisconsin Case No,: 12-32487-MDM
- 1/3/14 - State of Wisconsin Circuit Court Civil Division, Milwaukee County

INVESTIGATE | REPORT | TESTIFY



- Pearl's Two, LLC Plaintiff, v. Ramkrishna Subedi Defendant, and Sunita KC Defendant, Case No: 12CV012268
- Sunita H. KC and Ramkrishna Subedi, Plaintiffs v. The Zira Corporation, Defendants/Third Party Plaintiffs, v. Talik KC Third-Party Defendant, Case No. 12CV002758
- 1/30/14 - U.S. Dept. of Justice, Office of the United States Trustee – Joseph G. Miller, Debtor, United States Bankruptcy Court, Eastern District of Wisconsin Case No,: 12-32487-MDM

## Compensation Hourly Rates – As of July 1, 2013

Standard rate $240/hr.
Depositions & expert testimony rate $340/hr.

## Employment History:

Chortek LLP (FKA Chortek & Gottschalk, LLP)
Public Accounting Firm, Principal- Forensic Accounting and Litigation Support Services
Waukesha, WI
2007 – Present

VanderBloemen Rodrigues & Assoc. LLC
Public Accounting Firm, Member
Waukesha, WI
2004 – 2007

Schenck On-Site, LLC
Public Accounting Firm, Managing Member
Milwaukee, WI
2003-2004

Tax Compliance Group, LLC
Consulting Firm, Managing Member
Oconomowoc, WI
2002-2003

Jefferson Wells International (FKA AuditForce, Inc)
Consulting Firm, Sr. Tax Manager, Tax Director and National Tax Director
Milwaukee, WI
1995-2001

Schenck Business Solutions SC (FKA Aronson Schroeder & Co., Inc)
Public Accounting Firm, Tax Senior/Manager
Milwaukee, WI
1994-1995

Kolb + Co. (FKA Kolb Lauwasser, LLP)
Public Accounting Firm, Tax Senior
Milwaukee, WI
1992-1994

Price WaterhouseCoopers, LLP (FKA Price Waterhouse, LLP)
Public Accounting Firm, Tax Associate
Milwaukee, WI
1992

UW-Milwaukee
Milwaukee, WI
Teaching Assistant, Financial Accounting