IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

SIX STAR HOLDINGS, LLC
and FEROL, LLC,

    v.                                                                                                    Case No. 10-cv-893

CITY OF MILWAUKEE

**PLAINTIFFS' RESPONSES TO DEFENDANT'S MOTIONS IN LIMINE**

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, WI 53703
Phone        608/283-6001
Fax           608/283-0945
Email:       jsolson@scofflaw.com

# Contents

I. Motion 1: Prohibiting Plaintiffs from calling specified witnesses ........................... 1

    A. Chris Lichtenberg ................................................................................................ 1
    B. Alderman Joe Dudzik ........................................................................................ 2
    C. Tim Olson ............................................................................................................ 2
    D. Mike Meyer ......................................................................................................... 2
    E. Cherie Ferraro .................................................................................................... 3
    F. Paul Rodrigues ................................................................................................... 3

II. Motion 2: Prohibiting Plaintiffs from admitting specified exhibits ......................... 3

III. Motion 3: Defendant objects to the plaintiffs' requested jury instruction before trial filed as Document 104-4. .............................................................................................. 5

IV. Motion 4. Plaintiff Six Star Holdings LLC has abandoned its claim for alleged damages and neither plaintiff Six Star Holdings LLC or plaintiff Ferol LLC may seek damages in connection with the March 13, 2013 Decision and Order. ............................ 7

V. Motion 5. Defendant objects to the plaintiffs' special verdict that seeks the jury to answer the second question regardless of how question number 1 is answered. .......... 8

The Plaintiffs, Six Star Holdings, LLC, and Ferol, LLC, by their attorneys, The Jeff Scott Olson Law Firm, S. C. by Jeff Scott Olson, hereby submit the following Responses to the Defendant's motions in limine.

I. **Motion 1: Prohibiting Plaintiffs from calling specified witnesses**

Defendant has objected that these people were not disclosed in Rule 26(a)(1) or elsewhere, and that it is prejudiced by their being listed as witnesses.

A. **Chris Lichtenberg**

Mr. Lichtenberg was disclosed in Plaintiffs' Response to Defendants' Interrogatories:

> **Interrogatory No. 5:** Identify all persons known by plaintiffs or individuals identified in response to Interrogatories Nos. 1 and 3 that operate gentlemen's clubs or locations which offer exotic dance entertainment to the public without possessing an alcohol beverage license in the State of Wisconsin.
>
> Response to Interrogatory No 5:
>
> Assuming that by this question, you are asking about the identity of individuals in Wisconsin who operate gentlemen's clubs or clubs that offer exotic dance entertainment without possessing an alcoholic beverage license, Mr. Ferraro is not personally acquainted with any. **He does know of one, Mr. Chris Lichtenberg, who operates Beansnappers, located at N 2901 Hwy 47, Appleton WI, 54915, telephone 920-733-3770**.

1

### B. Alderman Joe Dudzik

This witness was first identified by defense counsel. Mr. Dudzik is the recipient of the forwarded email originally written from the office of Plaintiff's counsel to Jon Ferraro that the City seeks to introduce into evidence. (Dkt. # 105-1.) Although Mr. Dudzik apparently received this email in September, 2010, Plaintiffs' counsel was first made aware of the email being in Mr. Dudzik's possession on September 12, 2014. The defense cannot possibly be prejudiced by the inclusion of this witness since Mr. Dudzik, as an alderman, is its client, it has access to Mr. Dudzik and plaintiffs' counsel does not, and it is the City who first inserted Mr. Dudzik into the equation.

As counsel for the City himself has asserted, Mr. Dudzik has information that bears upon question of whether or not The Silk Group would have opened a dry club; having full access to the witness, the City is not prejudiced in any way. It is anticipated that Mr. Dudzik's testimony will take no more than ten minutes.

### C. Tim Olson

Plaintiffs agree that Tim Olson was not disclosed and therefore withdraw his name as a witness.

### D. Mike Meyer

Mr. Meyer was disclosed as a potential witness in Plaintiffs' Supplemental Rule 26(a)(1) Disclosures Relevant to Damages which was emailed to counsel for defendant

on April 21, 2014. Receipt was acknowledged by return email from defense counsel dated April 24, 2014. A copy of the disclosures and of the emailed acknowledgement are attached as exhibits to the Declaration of Sarah Furey Crandall.

### E. Cherie Ferraro

Mrs. Ferraro was also disclosed as a potential witness in Plaintiffs' Supplemental Rule 26(a)(1) Disclosures Relevant to Damages, emailed to counsel for defendant on April 21, 2014, receipt of which was acknowledged April 24, 2014.

### F. Paul Rodrigues

Mr. Rodrigues is not a consulting expert, but has been designated as an expert to be called at trial. Where an expert is designated to testify at trial, "the expert is recognized as presenting part of the common body of discoverable and generally admissible information and testimony available to all parties." *House v. Combined Ins. Company of America,* 168 F.R.D. 236, 245 (N. D. Iowa 1996). The Defendant has cited no case or rule that prohibits the Plaintiffs from calling any of the defense witnesses adversely, and Plaintiffs' counsel is not aware of any.

## II. Motion 2: Prohibiting Plaintiffs from admitting specified exhibits

**Exhibits 19 and 22** (a nation-wide survey of non-alcoholic clubs and a survey of Silk patrons) were relied upon by Plaintiffs forensic accounting expert John

Peters. Plaintiffs do not plan to introduce these as exhibits unless the Defendant attacks Mr. Peters's reliance on them, in which case it may be necessary to refute the inference that there was anything shoddy about Mr. Peters's preparations. **Exhibit 17 (**a list of attendance records at Badger and Packer games) is offered not for the truth of what is contained therein but to show why Jon Ferraro did what he did and as such is an exception to the rule against hearsay. Jon Ferraro will testify that in 2010, he downloaded such a list from the Internet as part of his investigating whether a dry club would be feasible. That 2010 document no longer exists; however, Exhibit 17 was prepared by Mr. Ferraro about two years ago and was sent to defense counsel.

**III.  Motion 3:  Defendant objects to the plaintiffs' requested jury instruction before trial filed as Document 104-4.[1]**

---

[1]  **Plaintiff's Requested Instruction Before Trial:**

The Plaintiffs are two Wisconsin corporations owned by the same group of investors. While the Court has determined that the rights of both Plaintiffs were violated by the City of Milwaukee, only Ferol, LLC, is seeking damages in this trial.

In 2009 and 2010, Plaintiff Ferol applied for licenses to operate as a liquor-licensed gentlemen's club at 117 West Pittsburgh Avenue in Milwaukee.  In 2009, it withdrew its application in the face of community opposition. In 2010, it went through the application process, and its application was denied.

The City of Milwaukee also had ordinances in place that prohibited the operation of a non-alcohol-serving gentlemen's club without a permit from the city. In 2010, Ferol was prohibited from opening a non-alcohol-serving gentlemen's club without a city permit by two ordinances, the City's theater ordinance and the city's public entertainment club ordinance.  The court has held in earlier proceedings in this case that those City ordinances were both unconstitutional, and that it was not necessary for Ferol to have applied for a permit under either of these ordinances to pursue its claims for damages in this case.

If Ferol establishes in this trial that it would have operated a "dry" gentlemen's club but for the existence of the theater and public entertainment club ordinances, it will be entitled to recover damages for its lost profits, if any, during the time the ordinances prevented it from operating. The parties disagree on both whether Ferol would actually have opened such a club, and, if it would have done so, when such a club would have opened for business. The period during which Ferol was prohibited from opening a "dry" gentlemen's club at 117 West Pittsburgh Avenue, by the unconstitutional ordinances, ended on March 12, 2012, when those ordinances were repealed and replaced.  Neither the constitutionality of the replacement ordinances, nor the amount of lost-profits damages sustained by Ferol after March 12, 2012, if any, are matters to be determined in this trial.

**Defense Objection 1:** ". . . the court has not determined that the rights of plaintiff Ferol, LLC have been violated by the City of Milwaukee."

**Plaintiffs' Response:** The Court determined that the theater licensing ordinance and the public entertainment club licensing ordinance were unconstitutional because they were prior restraints lacking the required procedural safeguard of a specified and short time limit within which the licensor was required to make an up-or-down decision on a license application. (Dkt. # 87, 2-4.)

It is true that Ferol's entitlement to damages greater than nominal damages is contingent upon convincing the trier of fact that it would have opened a club. But its rights were violated just by being subject to the unconstitutional restraints on its rights to open a club that were the product of the unconstitutional ordinances, because each individual "has a personal constitutional right not to be subjected to governmental sanctions except pursuant to a constitutionally valid rule of law." Richard H. Fallon, Jr., As Applied and Facial Challenges and Third-Party Standing, 113 Harv. L. Rev. 1321, 1331 (April, 2000). This doctrine, called the "valid rule requirement," is fundamental to American jurisprudence, as it underlies *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) and is basic to the concept of the rule of law. Fallon, *id*. at 1332. See, e.g., *Bd. of Trustees*

---

At the close of the evidence you will be asked to return a verdict in which you find, as matters of fact, first, whether Ferol would have opened a non-alcohol-serving club at 117 West Pittsburgh Avenue before March 12, 2012, if the theater and public entertainment club ordinances had not existed, and, second, the amount of profit it would have earned through March 12, 2012.

*of State Univ. of New York v. Fox,* 492 U.S. 469, 485 (1989)(recognizing "right not to be bound by a statute that is unconstitutional.")

**Defense Objection 2:** ". . . the statements that the court had earlier held that the City ordinances were unconstitutional, and that it was not necessary for Ferol to have applied for a permit under either of these ordinances to pursue its claims, are also incorrect."

**Plaintiffs' Response:** The Court did hold that the theater licensing ordinance and the public entertainment club licensing ordinance were unconstitutional. (Dkt. # 87, 2-4.) The Court held by implication that it was not necessary for Ferol to have applied for a permit under either of these ordinances to pursue its claims, because if an application had been a prerequisite to this case, the court would have granted summary judgment to the defendant City. It also said, "As a general matter, it is true that a plaintiff can bring a facial challenge to an allegedly unconstitutional licensing regulation without applying for a license." (Dkt. # 78, 21.) This conclusion was correct: It is well established that one who is subject to a regulation need not apply for a license or permit under it in order to challenge it. *Lovell v. Griffin*, 303 U.S. 444, 452-53 (1938); *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755 (1988).

> IV. **Motion 4. Plaintiff Six Star Holdings LLC has abandoned its claim for alleged damages and neither plaintiff Six Star Holdings LLC or plaintiff Ferol LLC may seek damages in connection with the March 13, 2013 Decision and Order.**

This is the same issue raised by the Plaintiffs' motion for an award of nominal

damages for Six Star. The City points out that, in discovery responses, the Plaintiffs have stated that they will not attempt to prove damages in connection with the Court's decision of March 13, 2013, that Six Star's rights were violated in connection with the City's handling of its theater license ordinance. But nominal damages are what courts award to Plaintiffs who establish a constitutional violation, such as having been subjected to an unconstitutional ordinance, but cannot prove compensatory or punitive damages. *Smith v. City of Chicago*, 913 F.2d 469, 473 (7th Cir.1990)("Although compensatory damages could not be recovered for a constitutional violation, absent a demonstration of actual injury resulting from the constitutional violation, an award of nominal damages would still be appropriate," citing *Carey v. Piphus*, 435 U.S. 247, 266–267 (1978)).[2]

### V. Motion 5. Defendant objects to the plaintiffs' special verdict that seeks the jury to answer the second question regardless of how question number 1 is answered.

This is purely discretionary with the Court, and, as suggested by Plaintiffs' counsel at the Final Pretrial Conference, the main reason for the jury to go ahead and answer both questions is one of judicial economy. If the jury answers question 1 on the verdict form "no," but later this Court or some subsequent court should find that the issue should have been determined in the Plaintiffs' favor on summary judgment, it

---

[2] If Six Star's case were submitted to the jury, and the Plaintiffs declined introduce any evidence of actual damages to Six Star, as they plan, the jury would be directed to enter a mandatory verdict for nominal damages. The concluding sentence of Seventh Circuit Civil Pattern Jury Instruction 7.23 reads: "If you find in favor of Plaintiff but find that the plaintiff has failed to prove compensatory damages, you *must* return a verdict for Plaintiff in the amount of one dollar ($1.00)." (emphasis supplied.)

would not be necessary to conduct a new trial if the first jury has already answered the damages question.

There is another reason for the Court to direct the jury to answer both questions, no matter how it answers the first question. Jurors are often impressively dedicated and professional, but they are also human. At the end of a long trial, they will undoubtedly want, to some extent, to fulfill their roles as impartial adjudicators of the facts. But, especially if the Court, as it has indicated it may, requires them to serve into the evenings, the jurors will also want very much to wrap up their business and go home. A special verdict form that tells them that a defense verdict on question one is a quick ticket out of the courthouse introduces a biasing factor that ought to be avoided if possible. It is impossible to know how many jurors might let the opportunity to go home more quickly influence them to decide a close call on question one for the defense, but it is all but certain that some would.

Dated this Friday, February 06, 2015.

Respectfully submitted,

Six Star Holdings, LLC and Ferol, LLC,

Plaintiffs,

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, WI 53703

Phone     608/283-6001
Fax       608/283-0945
Email:    jsolson@scofflaw.com

/s/ Jeff Scott Olson

Jeff Scott Olson
ATTORNEY FOR PLAINTIFFS

**Certificate of Service**

I hereby certify that on Friday, February 06, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Assistant City Attorneys Adam B. Stephens and Stuart Mukamal, Attorneys for the Defendant, and I hereby certify that I have mailed by United States Postal Service the document to the following non ECF participants: none.

/s/ Jeff Scott Olson